Richard LANE and Faith
Lane, Plaintiffs,

v.

CAPITAL ACQUISITIONS AND MAN-
AGEMENT COMPANY, a business
entity, et al., Defendants.

No. 04–60602–CIV.

United States District Court,
S.D. Florida.

May 9, 2008.

Chris Kleppin, Harry O. Boreth, Glasser Boreth Ceasar & Kleppin, Plantation, FL, for Plaintiffs.

Michele Leneve Stocker, Greenberg Traurig, Fort Lauderdale, FL, for Defendants.

### ORDER AFFIRMING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

KENNETH A. MARRA, District Judge.

**THIS CAUSE** is before the undersigned on Plaintiffs' Verified Motion For Attorney's Fees [DE 214]. This matter was referred to the Honorable Linnea R. Johnson, United States Magistrate Judge, Southern District of Florida. A Report

1. Plaintiffs indicate that they seek fees as a result of the December 18, 2007, Final Judgment (DE 209) entered in this matter against

and Recommendation, dated March 21, 2008 [DE 225] has been filed, recommending that

1. The Motion for Attorney's Fees be partially granted and partially denied;

2. The hourly rate for attorneys Harry O. Boreth and Lloyd S. Glasser be set at $450.00;

3. The hourly rate for attorney Chris Kleppin be set at $270.00 per hour;

4. 13.9 hours be allowed for services by attorney Glasser for a total award of $6,255.00;

5. 11.2 hours be deducted from the reported time by attorney Boreth, allowing recovery of 3.5 hours for a total award of $1,575.00;

6. 198.2 hours be allowed for services by attorney Kleppin, for a total award of $53,514.00; and

7. Interest on the total fee award of $61,344.00 accrue at the rate of 3.20%, calculated from December 18, 2007.

No objections to the Report and Recommendation have been filed. Accordingly, upon a *de novo* review of the entire file and record herein, it is hereby

**ORDERED AND ADJUDGED** that United States Magistrate Judge Johnson's Report and Recommendation be, and the same is RATIFIED, AFFIRMED and APPROVED in its entirety. Plaintiffs' Motion for Attorney's Fees **[DE 214] is GRANTED IN PART AND DENIED IN PART** as particularized above.

### REPORT AND RECOMMENDATION ON PLAINTIFFS' VERIFIED MOTION FOR ATTORNEY'S FEES

LINNEA R. JOHNSON, United States Magistrate Judge.

**THIS CAUSE** is before the court on Plaintiffs' Verified Motion for Attorney's Fees (DE 214).[1] The Motion is now ripe

Defendant XYZ Venture Partners, L.L.C., which allowed Richard Lane to recover a

for adjudication. After review and consideration of the argument and evidence presented, as set forth below, the undersigned respectfully recommends that Plaintiffs' Motion be granted in part and denied in part.

## I. BACKGROUND

Plaintiffs brought, and tried, Count III of this action under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et. seq. against Defendant XYZ Venture Partners, L.L.C. (XYZ). A jury awarded them relief. Plaintiffs now seek to tax a total of $78,000.00 in fees against XYZ for time expended by three attorneys, at the billing rates identified below:[2]

| Attorney | Hourly Billing Rate | Number of Hours | Total Fee |
|---|---|---|---|
| Chris Kleppin | $325.00 | 198.2 | $64,415.00 |
| Harry O. Boreth | 475.00 | 14.7 | 6,982.50 |
| Lloyd S. Glasser | 475.00 | 13.9 | 6,602.50 |
| | | | $78,000.00 |

DE 214–1, Ex. 2 (DE 214–2 at 31).[3]

The record does not reflect any objections or response to Plaintiffs' motion, and the time has now passed for Defendant XYZ to file any such pleadings.

## II. STANDARD OF REVIEW

 Under the FLSA, a prevailing plaintiff is entitled to an award of reasonable attorney's fees. 29 U.S.C. § 216(b); *Christiansburg v. Garment Co. EEOC*, 434 U.S. 412, 415 n. 5, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978): *Dale v. Comcast Corp.*, 498 F.3d 1216, 1221 n. 8 (11th Cir.2007). Determining a reasonable fee pursuant to 29 U.S.C. § 216(b) is left to the sound discretion of the district judge, to and including the exclusion of excessive or unnecessary work. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983);[4] *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir.1988); *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543 (11th Cir. 1985). Work on any unsuccessful claims is not "deemed to have been 'expended in pursuit of the ultimate result achieved' ". *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. Therefore, an award to a prevailing party requires that any "unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful

---

total of $10,892.00 and Faith Lane a total of $13,335.00. DE 209 at 2, ¶¶ 5 & 6. That Final Judgment also granted Defendants George Othon and Reese Waugh's Motion to Dismiss for Lack of Personal Jurisdiction, allowing those two Defendants to "take final judgment against Plaintiffs," thereby denying Plaintiffs recovery from them. DE 209 at 2, ¶ 7. On December 28, 2007, Plaintiffs moved to amend said Final Judgment (DE 210), and on February 21, 2008, the Honorable Kenneth A. Marra, United States District Judge, entered an amended Final Judgment (DE 221). The Amended Final Judgment increased Richard Lane's recovery to $12,404.00 and Faith Lane's to $17,885.00. DE 221 at 2, ¶¶ 5 & 6. Both Final Judgments allowed post judgment interest to accrue at the rate of 3.20% from December 18, 2007. DE 209 at 1, ¶ 7. Plaintiffs filed a Notice of Appeal as to the disposition in this matter of issues pertaining to Defendants George Othon and Reese Waugh. DE 213.

2. Plaintiff's Verified Motion to Tax Costs against XYZ (DE 211) was adjudicated on February 21, 2008 (DE 219).

3. Plaintiffs indicate in their Motion that these entries only cover time expended "up to January 16, 2008, because that is the date that this motion is filed," adding that they "intend to file supplemental motions for attorneys [sic] fees at appropriate times in the case as further work necessitates." DE 214–1 at 1, n. 1.

4. *Hensley* involved an attorney's fee award under 42 U.S.C. § 1988, but its reasoning applies equally to attorney's fees under the FLSA. In *Hensley*, the Supreme Court noted that "[t]he standards set forth in this opinion are generally applicable to all cases in which Congress has authorized an award of fees to a 'prevailing party.' " 461 U.S. at 433 n. 7, 103 S.Ct. 1933.

claim." *Id.* The burden is on the moving party to establish entitlement to attorneys' fees; to document the prevailing market rate; and to prove the propriety of hours expended. *Hensley,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir.1994); *Norman.v. Housing Auth.,* 836 F.2d at 1299 (citing *NAACP v. City of Evergreen,* 812 F.2d 1332, 1338 (11th Cir. 1987)); *Gaines v. Dougherty Co. Bd. of Education,* 775 F.2d 1565, 1571 (11th Cir. 1985).

■ A district court's "decision regarding the appropriate hourly rate may be made either by analyzing the affidavits submitted by counsel or, if this documentation is insufficient, by relying upon the court's expertise." *Avirgan v. Hull,* 705 F.Supp. 1544, 1549 (S.D.Fla.1989) (citing *Norman v. Housing Auth.,* 836 F.2d at 1303). The reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth.,* 836 F.2d at 1299 (citing *Blum v. Stenson,* 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). At the heart of the reasonable hours concept is the guidance from the United States Supreme Court requiring fee applicants to use "billing judgment" in the listing of the hours spent on a case, making "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary," *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933, *"irrespective of the skill, reputation or experience of counsel,"* *Norman v. Housing Auth.,* 836 F.2d at 1301 (emphasis in original) (citing *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933).[5] Satisfac-

tory evidence of the market rate requires more than the mere affidavit of the attorney performing the work. *Blum,* 465 U.S. at 896 n. 11, 104 S.Ct. 1541. Also insufficient is testimony that a given fee is reasonable; evidence must be of rates actually billed and paid. *Hensley,* 461 U.S. at 439 n. 15, 103 S.Ct. 1933. Such evidence may be adduced from charges of lawyers under similar circumstances or by opinion evidence. *Norman v. Housing Auth.,* 836 F.2d at 1299.

■ Once the prevailing market rate is determined, it is then multiplied by the number of reasonable hours expended on the matter. *Norman v. Housing Auth.,* 836 F.2d at 1299. The resulting figure, known as the "lodestar," may thereafter be enhanced or reduced depending on the results obtained or the risk of non payment. *Pennsylvania v. Delaware Valley Citizens' Council II,* 483 U.S. 711, 745, 107 S.Ct. 3078, 97 L.Ed.2d 585(1987). The most important consideration in adjusting a resulting lodestar is the degree of a plaintiff's success in litigation. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. In the event of a limited success, the court should only award a fee that is reasonable in accordance with that result. *Id.* at 440, 103 S.Ct. 1933. But even if a result is exceptional, an enhancement of the lodestar is not permissible "unless there is specific evidence in the record to show that the quality of representation was superior to that which one would reasonably expect in light of the rates claimed." *Norman v. Housing Auth.* 836 F.2d at 1302 (citing *Blum,* 465 U.S. at 899, 104 S.Ct. 1541).

■ When analyzing the market rates attested to, the district court may

---

5. Besides ascertaining the reasonable number of hours an attorney spends in the handling of a case, the district court also analyzes the particular lawyering skills exhibited by the attorney. *Norman v. Housing Auth.,* 836 F.2d at 1301. The undersigned did not participate in any aspect of the proceedings for the case at bar and is, therefore, unable to assess this particular element of the fee recommendation.

still consider in calculating the lodestar any of the twelve factors in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), which was the which was the pre-*Hensley* and *Norman v. Housing Auth.* standard.[6] *Norman v. Housing Auth.,* 836 F.2d at 1299. Enhancement of the lodestar should be made only in exceptional cases where need and justification for such enhancement are readily apparent and supported by clear evidence of record. *Pennsylvania v. Delaware Valley,* 483 U.S. at 728, 107 S.Ct. 3078; *Norman v. Housing Auth.,* 836 F.2d at 1302. A downward adjustment of the lodestar may be required not only when there are "excessive, redundant, or otherwise unnecessary" hours, but also when the party being awarded fees achieved only limited success or spent time on unsuccessful and unrelated claims. *Hensley,* 461 U.S. at 434, 436, 103 S.Ct. 1933. Finally, "[t]he court does not have to accept uncontradicted evidence [on the hourly rate] if there is a reason for rejecting it." *Carmichael v. Birmingham Saw Works,* 738 F.2d 1126, 1137 (11th Cir.1984) (citing *King v. McCord,* 707 F.2d 466, 468 (11th Cir.1983)). The court itself is considered to be an expert "and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman v. Housing Auth.,* 836 F.2d at 1303.

## III. DISCUSSION AND FINDINGS OF FACT

Here, the Plaintiffs are prevailing parties in FLSA litigation. Therefore, they are entitled to attorneys' fees. The issues for determination, then, are whether or not (1) all fees sought are part of this litigation; (2) the hourly rate is reasonable and based on the prevailing market rate as defined in controlling case law; (3) the number of hours spent on the case are reasonable; (4) the relative success obtained is consonant with the fees sought.

### a. Plaintiffs' Argument is Not Persuasive in Support of the Fees Requested.

Plaintiffs indicate that despite their obtaining "an excellent result" in this litigation, their counsel has reduced the fees sought because of not asking for fees "associated with: 1) the race discrimination claims; 2) fees solely associated with CAMCO;[7] 3) fees that were spent in the *Barrett* case, even though they benefitted the Lanes; and 4) the firm rarely bills for attorney meetings about the cases." DE 214–1 at 3–4.

■ The adduced reduction "in the *Barrett* case" refers to a Southern District of Florida class action, *Barrett v. Capital Acquisitions and Management Co.,* Case No. 03–62091–CIV–WPD. DE 214–1 at 1, n. 1. Plaintiffs allege that the amount of time spent by their counsel in the *Barrett*

---

**6.** The *Johnson* factors are as follows: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service property; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the profes-

sional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19.

**7.** CAMCO is Defendant Capital Acquisitions and Management Company, the only Defendant originally sued by Plaintiffs in this matter, which eventually entered bankruptcy proceedings and from which Plaintiffs' counsel obtained fees from the receivership liquidation of CAMCO's assets. *See* DE 75 (providing Notice of Bankruptcy for CAMCO); *see also* DE 214 at 1–2, n. 1 (containing representation as to recovery from CAMCO).

litigation "significantly" reduced the time expended in the case before this court because of being able to use evidence obtained in *Barrett* to litigate the case at bar. *Id.* Plaintiffs, however, fail to quantify the number of hours for which they do not seek recovery as a result of the *Barrett* fee award. Also, *Barrett* does not provide guidance on the hours spent in that matter or of the hourly rate recovered. The *Barrett* Final Judgment (So. Dis. of Fla. Case No. 03–62091–CIV–WPD, DE 247) was entered as the result of a Joint Notice of Settlement, and the only information derived from said Final Judgment is that Plaintiffs' law firm received $232,000 in fees and $23,415.86 for costs (*id.,* DE 247 at 2, ¶¶ 3 & 4). Those fees were paid to Plaintiffs' counsel from the bankruptcy proceedings of Defendant CAMCO. *See* note 8 *supra* and accompanying text (addressing CAMCO proceedings and recovery).

Also, in relation to the *Barrett*/CAMCO fee recovery, the undersigned reviewed the Claims Register for the CAMCO proceedings before the Bankruptcy Court, Northern District of Illinois, Case No. 95–12554. That Claims Register shows that Plaintiffs' law firm filed a claim for $255,415.86 for fees (Entry 60–1) and $32,714.34 for costs (Entry 61–1). In addition to their own separate claims for fees and costs, Plaintiffs' counsel filed claims on behalf of nineteen individuals in the CAMCO bankruptcy proceedings (Entries 46–1 through 59–1 & 62–1 to 63–1). A search for a break-

down of time expended or allocation for individual claimant's representation in the CAMCO bankruptcy, however, did not divulge that information. Consequently, it is impossible for the undersigned to assess the representation made in the Motion at bar as to a significant reduction in fees resulting from the *Barrett* case. Indeed, all that is evident from the research is that Plaintiffs' counsel obtained a substantial fee/cost recovery, even if less than what the claim of record alleged.

Additionally, and important, too, is the fact that even though the Third Amended Complaint (DE 158) filed herein does address discrimination claims, those causes of action are contained in Counts I, II, and III, which only names CAMCO as a defendant.[8] As earlier noted, Plaintiffs settled their claims with CAMCO. *See* DE 183 (notifying court of CAMCO settlement) *and* DE 187 (containing order dismissing CAMCO with prejudice); *see also* note 8 *supra* and accompanying text (containing information on CAMCO's bankruptcy, Plaintiffs' own representation of fee recovery). The only CAMCO settlement information available to this court outside the CAMCO bankruptcy proceedings, shows that Plaintiffs' counsel received a payment of $15,000.00 "for attorneys' fees, costs and disbursements."[9] DE 183–2 at 4. Thus, the same as with the *Barrett* fees, the court is unable to determine the reasonable number of hours or billing rate recovered by counsel from the CAMCO settlement with Plaintiffs. All the undersigned

---

8. Count I complains of discriminatory deprivation of equal employment opportunities. DE 158 at 8. Count II pleads discriminatory discharge. *Id.* at 9. Count III alleges discriminatory retaliation. *Id.* at 9–10. All these counts are pled under 42 U.S.C. § 1981.

9. A search of the proceedings before the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 04–cv–07781 did not provide a breakdown for

the computation of fees and costs to Plaintiffs' counsel. The only document of record in that regard is a copy of the same settlement agreement related to the litigation at bar. *See* DE 183–2 *and* No. Dis. of Ill. Case No. 04–cv–07781, DE 402, Ex. A (reflecting CAMCO Settlement Agreement). The fee recovery in the Illinois civil action appears to be over and above the one obtained through the CAMCO bankruptcy proceedings in the Northern District of Illinois.

**1352**

can state with certainty as to the CAMCO-related fees is that they cannot be included in the computation at bar for the simple reason that they do not pertain to the FLSA Count in this litigation. Just as it would be improper for Plaintiffs to attempt a parallel fee recovery for equivalent work done on the *Barrett* case, which they recognize, a double recovery as it pertains to CAMCO cannot be allowed. Hence, the representation in that regard appears superfluous and the undersigned does not find it to be a supportive statement as to the propriety of the fees sought herein.

Plaintiffs' fee petition also alleges that its attorneys "rarely" bill "for attorney meetings about the cases." (DE 214–1 at 4). Such an attempt is not only improper but it is disallowed by Eleventh Circuit clear precedent that when two or more attorneys are doing the same work without making a distinct contribution to the case the duplicative fees cannot be sought. *ACLU of Georgia v. Barnes,* 168 F.3d 423, 432 (11th Cir.1999). Thus, the undersigned finds that the statement as to "rarely" billing meeting time between attorneys is also not a meritorious statement in considering the reasonableness of the fees sought herein.

### b. *The Hourly Rates Sought Should Be Reduced.*

A review of the evidence provided in support of the fee request indicates that neither attorney Boreth nor attorney Glasser provides an affidavit for their respective efforts in this matter. The affidavits by Peter T. Mavrick and Gloria O. North, submitted to confirm the propriety of the fees, aver that the requested hourly rate of $475.00 per hour for attorneys Boreth and Glasser is reasonable. DE 214–2 at 7, ¶ 9, at 11–12, ¶ 8. Even though Affiants Mavrick and North do not address background information on Messrs. Boreth and Glasser, the affidavit of attorney Chris Kleppin provides an insight into their years of practice and educational background. DE 214–2 at 3, ¶ 5. Nonetheless, a review of the fee award in *James v. Wash Depot Holdings, Inc.,* 489 F.Supp.2d 1341 (S.D.Fla.2007), referenced by Plaintiffs in their Motion (DE 214–1 at 7), convinces the undersigned that the requested hourly rate of $475.00 per hour should be reduced to $450.00.

The services rendered in this matter cover a period between April 8, 2004, and January 10, 2008. DE 214–2 at 30–31. 214–2 at 14–31 (Ex. 5). Plaintiffs seek fees for a total of $78,000.00 for 226.80 hours of work, requesting a rate of $475.00 per hour for Messrs. Boreth and Glasser, and $375.00 for Mr. Kleppin. The *James* services rendered involved a time period between April 15, 2005, and January 2, 2007. S.D. Fla. Case No. 05–60822–CIV–WPD, DE 141–2 at 19–46 (Ex. 5). The Honorable William P. Dimitrouleas, United States District Judge for the Southern District of Florida, who presided over the *James* case, had sufficient evidence before him, including the defendant's objections, to make the award. *See generally* 489 F.Supp.2d at 1347–54 (addressing arguments, analyzing proof). Based on all the evidence presented, Judge Dimitrouleas awarded Messrs. Boreth and Glasser a rate of $450.00 per hour, and allowed an hourly rate of $270.00 for Mr. Kleppin $270.00. 489 F.Supp.2d at 1341.

In contrast, there is no objection by Defendant XYZ in this matter to the requested fees. Nonetheless, the affidavits provided in support of the fee petition are more suggestive than probative in that their contents are totally unclear as to the value of counsel's contribution to the trial result. The provided descriptions for services rendered are of bare bones quality and generally reflect very standard, procedural acts other than preparing amend-

ments to the Complaint, the drafting of discovery, trial preparation, trial, and the seeking of fees and costs. As a result, up to the end of the year 2006, the undersigned finds no reason to deviate from Judge Dimitrouleas's award in *James* for the equivalent time frame, whereby Messrs. Boreth and Glasser received an hourly rate of $450.00, and Mr. Kleppin was awarded $270.00 per hour. 489 F.Supp.2d at 1350.

After 2006, the time breakdown shows that in a period of approximately twelve months between February 2007 and January 2008, legal services encompassed 41.0 hours, with attorney Boreth expending .2 hours, and the balance of services (40.8 hours) performed by attorney Kleppin. DE 214–2, Ex. 5 at 30–31. Of attorney Kleppin's reported 40.8 hours during the aforementioned time period, trial preparation, including meeting with the clients and preparing jury instructions amounted to 10.8 hours. Ex. 5 at 31. Attendance at trial was 5.0 hours for attorney Kleppin, and his drafting of Plaintiffs' Motion to Alter or Amend Final Judgment (DE 210) is reported as taking 5.1 hours. *Id.* Further, the preparation of a Motion to Tax Costs (DE 211) took 5.5 hours,[10] and the Motion for Attorneys' Fees at bar (DE 214) reportedly necessitated 8.1 hours of Mr. Kleppin's time. *Id.*

Thus, of the 41.0 hours of legal services to Plaintiffs between 2007 and 2008, Mr. Kleppin spent more time seeking to amend the Final Judgment and preparing Motions to Tax Costs and Fees (13.6 hours) than preparing for trial (10.8 hours) or trying the case (5.0 hours). The balance of the 2007–08 time, including Mr. Boreth's .2

hour, total 11.6 hours which were spent mostly in the relatively ordinary process of reviewing incoming pleadings, with the exception of attendance at a November 30, 2007, hearing before Judge Marra.[11]

After considering the quality and value of the services rendered, the undersigned is not persuaded that the 2007–08 work performed justifies increasing the hourly rates above those set by Judge Dimitrouleas through 2006. As earlier noted, about a fourth of the time reported involved routine processes which did not add to the Plaintiff's recovery. In addition, time spent in seeking fees and costs stands out disproportionately against the services directly related to the active prosecution and trial of the case. Therefore, the 41.0 hours reported 2007 and 2008 time, should remain at the same hourly rate as those awarded by Judge Dimitrouleas for 2006 in *James* (i.e., $450.00 per hour for Messrs. Boreth and Glasser, and $270.00 per hour for Mr. Kleppin).

### c. *No Fees Should Be Allowed for Representation in Unemployment Proceedings.*

The majority of the time sought for Mr. Boreth apparently involves representation of Plaintiffs in an Illinois unemployment matter during 2004. *See* DE 214–2 at 14–18, 22 (reflecting time entries for Boreth's involvement in administrative proceedings). The representation at issue totals 11.2 hours, which, when multiplied by the requested $475 hourly rate, comes to $5,320.00. There is no affidavit by Mr. Boreth or anyone else explaining to the court why this time should be taxable in this litigation. In addition, the court notes

---

**10.** The undersigned issued a Report and Recommendation (DE 217) on the Motion to Tax Costs reducing the requested amount. Plaintiffs did not file any objections to the Report and Recommendation, and Judge Marra approved it on February 2, 2008 (DE 219).

**11.** The undersigned is unaware of the amount of time the hearing lasted, or if the 2 hours claimed includes travel time, too.

that even though Mr. Kleppin references the "retainer agreement" signed by the Plaintiffs in this matter as allowing the taxing of fees or receiving 40% of any total recovery as fees (DE 214–1 at 7), he does not attach a copy of the agreement to the Motion at bar, nor does he provide the court with it for an in camera review.

Further, the cursory explanation of the professional services rendered by Mr. Boreth regarding the unemployment proceedings appears to indicate that any claims filed were unsuccessful. *See* 214–2 at 15 (indicating notice of appeal prepared) *and* 214–2 at 18 (reflecting "no appeal of unemployment compensation decision"). Moreover, Plaintiffs have not provided any support for the jury award being related to unemployment claims in any way, and the allegation that participation in the unemployment hearing was required "partly because Robin Stykel (Defendant's vice president of human resources) was going to appear, and she knew all about the overtime violations, knew that Defendants had to pay the Illinois Department of Labor back overtime to the collectors, and knew that Defendant's managers were instructing the collectors to work off of the clock to make their numbers," (DE 214–1 at 16–17) still does not shed any light on the significance of that information, or even if

Robin Stykel, in fact, testified at the administrative hearing and that testimony made a difference in the trial of this matter.[12]

Also, Mr. Boreth's background is provided by Mr. Kleppin without any effort whatsoever to elaborate much beyond information on his education and years of practice. In other words, it is unknown how active Mr. Boreth has been in the practice of labor and employment law in recent years, or, again, the significance of his contribution to Plaintiffs' case.[13] The fact that Mr. Boreth has practiced "in this area for approximately 40 years," (DE 2140 at 3, ¶ 5) is an ambiguous statement which could be understood to mean in Florida or in the area of labor and employment.[14] Based on the foregoing analysis, the undersigned finds that the hours expended by Mr. Boreth in the unemployment administrative proceedings should not be taxed in this matter.

d. **The Result Obtained Does Not Fall Within the Concept of Excellence Alleged and Does Not Justify the Hourly Rates Requested.**

 Plaintiffs represented in the CAMCO bankruptcy proceedings that the

---

**12.** There is no explanation as to deposing Ms. Stykel in the record for this case. Also, there is a reasonable inference that if any *Barrett* work related to the case at bar, it would most certainly involve discovery and information obtained therefrom, which raises a valid question as to whether or not any information on Robin Stykel's knowledge could have been derived from *Barrett*, and, therefore, fall within the concept of time allegedly not billed in this matter.

**13.** The same applied to Mr. Glasser. The Motion indicates that Messrs. Boreth and Glasser have "each handled well over 100 cases in Federal Court and are certified mediators, Mr. Boreth even being on the approved list of mediators as established by the South-

ern District of Florida." DE 214–1 at 1. These commentaries, nonetheless, still do not indicate the amount of time the two attorneys devote to the practice of labor and employment law or the quality or significance of their contribution to the representation of the Plaintiffs in this matter.

**14.** The undersigned takes judicial notice of the fact that in the *James* case the court indicated that Mr. Boreth appeared for Mr. Kleppin "at a calendar call without enough knowledge of the case to argue on the Motions in Limine." 489 F.Supp.2d at 1349. Indeed, the court found Mr. Boreth's presence at trial [to be] "unnecessary and duplicative" and reduced the hours sought for him accordingly. *Id.*

value of their claims were $515,107.07 (Richard Lane) and $520,366.64 (Faith Lane), respectively. CAMCO Bankr., No. Dis. of Illinois, Case No. 95–12554, Claims Registry Entries 58–1, 59–1.[15] The Amended Final Judgment in this matter allowed Richard Lane to recover $6,202.00 for back pay damages in unpaid overtime, and $6,202.00 in liquidated damages for a total of $12,404.00. DE 221 at 1–2, ¶¶ 1, 2, & 5. Faith Lane's recovery encompassed $8,942.50 for back pay damages for unpaid overtime, and $8,942.50 for liquidated damages, for a total of $17,885.00. *Id.* at 2, ¶¶ 3, 4, & 6.[16] The Settlement Agreement between Plaintiffs and CAMCO shows that for the release of all claims of racial discrimination Richard and Faith Lane received $10,000.00 each. DE 183–2 at 4, ¶¶ a & b. Plaintiffs fail to explain the separate value of the different claims involved in this matter or the reason for the settlement amounts with CAMCO. Also, the undersigned, not having presided over the trial of this case, cannot weigh the result obtained in that regard. One thing is clear, however: that the alleged value of Plaintiff's claims far outweighed the results obtained by settlement and trial. Hence, the undersigned cannot make a finding that they obtained an "excellent result" in this matter as averred (DE 214–1 at 3). As a result of being unable to place the trial outcome in a quality niche, the undersigned also will not address the adjustment of the lodestar, even though Plaintiffs do not present argument in that regard.

**e. Interest on the Fee Award is Proper as of the Date of the Original Final Judgment on the Amounts Set Forth in the Amended Final Judgment.**

The Eleventh Circuit allows an award of interest on taxed costs, with the interest calculated pursuant to the provisions of Title 28 U.S.C. § 1961(a). *Georgia Assoc. of Retarded Citizens v. McDaniel,* 855 F.2d 794, 799 (11th Cir. 1988). According to 28 U.S.C.1961(a), the post judgment interest calculation starts on the date of entry of the judgment based on a rate equal to the weekly average one year constant maturity Treasury yield published by the Board of Governors of the Federal Reserve System the week before the date of entry of the judgment. Judge Marra entered the Final judgment in this matter on December 18, 2007, (DE 209), and the Amended Final Judgment on February 21, 2008 (DE 221). The interest calculation, however, relates back to the date of the original judgment, i.e., December 18, 2007. *Georgia Assoc. of Retarded Citizens,* 855 F.2d at 799. Hence, the one year constant maturity Treasury yield applicable as an interest rate on the monies allowed as costs herein would be for the Treasury's report for the week ending on December 14, 2007. That interest rate is 3.20%.[17]

### IV. CONCLUSION

The number of hours sought in the Motion to Tax Costs is excessive, and the hourly rates requested by counsel should be reduced. It is, therefore,

---

**15.** The undersigned could not locate a disclosure in the case at bar setting forth the alleged value of Plaintiffs' claims.

**16.** The Amended Final Judgment also awarded a cost recovery from Defendant XYZ in the amount of $4,846.26 with interest accruing at the rate of 3.20% from December 18, 2007

(the date of the jury's verdict), and denied Plaintiffs any recovery from Defendants Othon and Waugh. DE 221 at 2–3, ¶ 8.

**17.** *See* www.federalreserve.gov, all statistical releases, weekly, using reported rate for the week ending on December 14, 2007.

RECOMMENDED that:

1. The Motion for Attorney's Fees (DE 214–1) be **PARTIALLY GRANTED AND PARTIALLY DENIED;**

2. The hourly rate for attorneys Harry O. Boreth and Lloyd S. Glasser be set at $450.00;

3. The hourly rate for attorney Chris Kleppin be set at $270.00 per hour;

4. 13.9 hours be allowed for services by attorney Glasser for a total award of $6,255.00;

5. 11.2 hours be deducted from the reported time by attorney Boreth, allowing recovery of 3.5 hours for a total award of $1,575.00;

6. 198.2 hours be allowed for services by attorney Kleppin, for a total award of $53,514.00;

7. Interest on the total fee award of $61,344.00 as recommended above accrue at the rate of 3.20%, calculated from December 18, 2007.

The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections to it, if any, with the Honorable Donald M. Middlebrooks, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. *Resolution Trust Corp. v. Hallmark Builders,* 996 F.2d 1144, 1149 (11th Cir.1993); *LoConte v. Dugger,* 847 F.2d 745, 749 (11th Cir.1988).

March 21, 2008.